IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID W. DRAPER                                                                                    PLAINTIFF

VS.                                               CIVIL NO. 06-2043

LINDA S. MCMAHON, ACTING COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION[1]                                                  DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, David Draper, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB") under the provisions of Title XVI of the Social Security Act ("Act").

**Procedural Background:**

The application for DIB now before this court was filed on October 9, 2003, alleging an amended onset date of February 27, 2003, due to mental retardation, anxiety, and pain. (Tr. 12, 46, 70). An administrative hearing was held on September 2, 2004. (Tr. 177-197). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was forty-two years old and possessed a high school education. (Tr. 12, 47, 64). However, plaintiff was enrolled in special education classes in high school. The record also reveals that he had past relevant work ("PRW") experience as a sawmill stamper. (Tr. 12, 59).

---

[1] Linda S. McMahon became the Social Security Commissioner on January 20, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

On June 22, 2005, the Administrative Law Judge ("ALJ"), issued a written decision finding that plaintiff's mental retardation, pain and anxiety were "severe" impairments within the meaning of the Act. (Tr. 17). However, he concluded that these impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. After discrediting plaintiff's subjective allegations, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform work activity at all exertional levels. Due to plaintiff's mental limitations, he also concluded that plaintiff would be limited to performing work where the interpersonal contact required was incidental to the work performed; the complexity of tasks was learned and performed by rote with few variables; the tasks required little judgment; and, the supervision required was simple, direct and concrete. (Tr. 19). With the assistance of a vocational expert ("VE"), the ALJ determined that plaintiff could perform his PRW as a sawmill stamper. (Tr. 20).

On March 25, 2006, the Appeals Council declined to review this decision. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 8, 9).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents his from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003), 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her

3

residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

Because a social security hearing is a non-adversarial proceeding, the ALJ has a duty to fully develop the record regarding the claimant's impairments. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). That duty includes seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped. *Id.* The ALJ is also required to recontact medical sources and may order consultative evaluations when the available evidence does not provide an adequate basis for determining the merits of the disability claim. *See* 20 C.F.R. §§ 416.912(e), 416.919a(b).

In the present case, the pertinent evidence reveals as follows. On October 23, 2003, Dr. W. R. Young indicated that plaintiff was not prone to physical illness. (Tr. 127). However, he noted that plaintiff did have cerebral palsy with questionable additional genetic problems, microcephalic features, and mental retardation. Dr. Young stated that plaintiff had worked at minial tasks when his father was alive to be his mentor and guide. Since his father's death, he indicated that plaintiff had basically been unemployable.[2] Dr. Young noted that plaintiff had difficulty with short-term memory and significant deficits in his fund of knowledge, ability to reason, and ability to organize thoughts. These, he opined, were characteristic of his mental retardation. It was Dr. Young's opinion that plaintiff's mental problems would preclude him from being gainfully employed. He

---

[2]We do note, however, that plaintiff had continued to be employed following his father's death, until his employer went out of business. (Tr. 171, 188). His brother testified that plaintiff had been employed by a family friend. (Tr. 171, 187). Further, the brother indicated that he checked in on plaintiff while he was working because plaintiff's anxiety made it difficult for him to work around others and stay focused. (Tr. 171, 188).

4

also indicated that plaintiff would not be a candidate for rehabilitation because he was permanently disabled and depended on others to maintain his finances and business affairs. (Tr. 127).

On January 7, 2004, Dr. Keith Norway performed an intellectual assessment and evaluation of plaintiff's adaptive functioning. (Tr. 131-134). Testing revealed that plaintiff had a full scale IQ of sixty-nine, indicative of mild mental retardation. (Tr. 132). Dr. Norway noted that plaintiff lived with his mother, got along with others, and communicated effectively. Although he concluded that plaintiff could respond appropriately to supervisors and co-workers in a low skilled job position, he indicated that plaintiff had only a fair ability to carry out instructions and was a slow learner. (Tr. 133-134). He also found that plaintiff met the definition of mental retardation because he had significant limitations in two or more areas of adaptive functioning. (Tr. 133). As such, Dr. Norway was of the opinion that plaintiff would have difficulty working at most jobs within the national economy. (Tr. 134).

This same date, plaintiff underwent a general physical examination with Dr. Gordon McCraw. (Tr. 135-141). Dr. McCraw found no physical impairments or abnormalities. (Tr. 238). However, he diagnosed plaintiff with Klinefelter's syndrome[3] and mental retardation. (Tr. 141, 142). Although he did not state plaintiff's specific limitations, he did indicate that plaintiff's impairments were severely limiting. (Tr. 142).

On December 9, 2004,. Dr. Douglas Brown conducted a complete battery of psychological

---

[3]Klinefelter syndrome is a term used to describe males who have an extra X chromosome in most of their cells. *See* National Institute of Child Health and Human Development, *Klinefelter Syndrome*, *at* www.nlm.nih.gov/medlineplus. Instead of having the usual XY chromosome pattern that most males have, these men have an XXY pattern. *Id*.

tests on plaintiff. (Tr. 163-167). He noted that plaintiff had a deformed head and facial features. Dr. Brown described plaintiff as looking like an adult premature baby. He also noted that plaintiff had worked in the past but had either worked for a family business or for a close family friend. Although Dr. Brown could not explain why his test results were so markedly different from Dr. Norway's, he indicated that intellectual testing had revealed that plaintiff had an IQ of ninety, which placed him in the average range of intellect. (Tr. 164). However, Dr. Brown found that plaintiff had suppressed verbal skills and was extremely slow and an extremely slow learner. As such, plaintiff was diagnosed with dysthymia with a significant impairment in mental speed. (Tr. 164).

Dr. Brown rated plaintiff's ability to deal with the public, deal with work stresses, function independently of others, maintain attention for extended periods of time, and maintain personal appearance as only fair. (Tr. 166-167). Further, Dr. Brown stated that plaintiff had moderate limitations with regard to understand, remembering, and carrying out complex job instructions. He was of the opinion that plaintiff would experience difficulties with employment due to his "slowness." (Tr. 167).

On February 17, 2005, Dr. Patricia Walz conducted a psychological evaluation of plaintiff. (Tr. 169-174). She examined plaintiff and reviewed Dr. Brown's report. Dr. Walz noted that plaintiff's appearance made it obvious that he did have some genetic or developmental abnormalities. (Tr. 172). She also indicated that plaintiff seemed to over-estimate his actual abilities when compared to his abilities as described by his brother. Although Dr. Walz did not conduct IQ testing, she stated that she would not have expected plaintiff's IQ to fall within the low average to average range of intellect, as found by Dr. Brown, because plaintiff was quite slow to respond and appeared to have limitations in concept formation, social judgment, and cognitive speed. (Tr. 173).

She noted that, while plaintiff described his functioning as quite independent, he actually relied on others to direct him in nearly all aspects of his life. Further, the mere fact that he did perform a few chores around the house did not convince her that he had the skills necessary to independently determine when tasks needed to be done. As such, Dr. Walz diagnosed him with dysthymia and cognitive disorder with significant mental slowing. (Tr. 174).

Dr. Walz also completed a mental RFC assessment. (Tr. 175-176). She rated plaintiff's ability to deal with work stresses; function independently; and, understand, remember, and carry out complex job instructions as poor. In addition, his ability to relate to co-workers, deal with the public, and maintain attention and concentration was said to be fair to poor. Dr. Walz determined that plaintiff had only a fair ability to use judgment; understand, remember, and carry out detailed instructions; behave in an emotionally stable manner; and, relate predictably in social situations. In addition, plaintiff's ability to interact with supervisors was rated as good to fair. Dr. Walz noted that plaintiff would likely function well in a sheltered workshop type of setting. (Tr. 176).

After reviewing the evidence of record, the undersigned is of the opinion that the case should be remanded to the ALJ for further development of the record concerning plaintiff's mental abilities and limitations. The record reveals that Drs. Norway, Young, and McCraw diagnosed plaintiff with mental retardation. We note, however, that Dr. Brown also evaluated plaintiff and obtained an IQ score that was drastically inconsistent with the findings of Dr. Norway. Dr. Brown was unable to explain the reasoning behind this discrepancy.[4] In fact, after conducting her own evaluation of plaintiff, Dr. Walz stated that she was surprised by Dr. Brown's findings. Given this inconsistency and the lack of evidence to explain it, we believe that the ALJ should have requested clarification

---

[4] We also note that the ALJ failed to address this inconsistency in his opinion.

concerning plaintiff's intellectual and academic abilities prior to rendering his decision.  Clearly, plaintiff's IQ has an impact on his RFC and the types of positions he is capable of performing. Because the ALJ failed to seek clarification regarding this issue, the undersigned finds that the case should be remanded to the ALJ for clarification and further development of the record concerning plaintiff's IQ.

In addition, we also take issue with the ALJ's RFC assessment.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).  "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

We note that the ALJ gave a great deal of attention to plaintiff's ability to work with others, understand instructions, and handle criticism.  In so doing, he failed to appropriately consider the impact that plaintiff's mental "slowness" would have on his ability to perform work-related activities

in the national economy. Several of the examining doctors indicated that plaintiff's slow mental speed would impact his ability to work. However, the ALJ merely concluded that plaintiff could perform work where the interpersonal contact required was only incidental to the work performed, the complexity of the tasks performed was learned and performed by rote with few variables and little judgment, and the supervision required for the tasks was simple, direct, and concrete. Clearly, this does not fully reflect plaintiff's mental limitations. While, plaintiff may well be able to perform these types of tasks, the record raises questions concerning plaintiff's ability to perform these activities on a daily basis at the level and/or pace expected of individuals working in the real world. It is significant to note that individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, giving the appearance that they are less impaired than they actually are. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir. 2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their "ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds). Given the fact that all of plaintiff's PRW has been performed under the guidance of either his father or his brother and the fact that plaintiff is mentally slow, we believe that remand is necessary to allow the ALJ to reconsider plaintiff's RFC.

      On remand, the ALJ is also directed to consider plaintiff's IQ and mental slowness when fashioning an appropriate hypothetical question for the vocational expert. *See Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005) (holding that in fashioning an appropriate hypothetical question for a vocational expert, the ALJ is required to include all of claimant's impairments supported by

substantial evidence in the record as a whole). In addition, the ALJ should make the VE aware of the fact that plaintiff was given special accommodations with regard to his PRW.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore recommend that the denial of benefits to the plaintiff be reversed and this matter be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ENTERED this 8th day of February 2007.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE